IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BRENT THOMPSON, SYLVIA THOMPSON, Trustee Under Declaration of Trust<br><br>        Plaintiffs,<br><br>  v.<br><br>THOMAS D. CANTWELL, et al.,<br><br>        Defendants. | Civil No. 01-3108-HO<br><br>ORDER |

Plaintiffs brought this action for breach of contract and default on a note and trust deed.

Plaintiffs, Brent and Sylvia Thompson, purchased the Cantwell Market in Ashland, Oregon from defendants Richard Handler, Margaret Handler, Jesse Alexander, and Nancy Alexander for $1,500,000 subject to a Note and Deed of Trust from these defendants to Valley

1       - ORDER

of the Rogue Bank (VRB). These defendants paid the note down to $600,000 at closing.

Plaintiffs subsequently leased the market back to defendants Tom and Roselyn Cantwell (Now Roselyn Martin) who were lessees completely independent of the other defendants who were not lessees. The lease provided that in addition to paying monthly rent to plaintiffs, the Cantwells alone, as lessees, would make monthly payments due to VRB and pay off the VRB note.[1] The Cantwells secured their promise to pay the VRB note by granting plaintiffs a security interest in the Cantwell Market's fixtures, equipment and inventory.

On May 18, 2001, plaintiffs locked the Cantwells out of the Grocery store despite the rent being current. The Cantwells used the cash flow from the market to pay both the rent and the installments on the VRB loan. Plaintiffs thereafter obtained an assignment of the note and trust deed. On May 24, 2001, plaintiffs sent a written notice of a termination of the lease asserting the lessees had abandoned the property. Prior to May 18, 2001, the Cantwells had agreed with Jeff Pygott that Pygott would take over the store. But as a result of plaintiff's actions, the plaintiffs were able to subsequently lease the store to Pygott for a substantially higher rental price.

---

[1] The lease provided that the Cantwells were solely responsible for the VRB loan.

Following a failure to make payments on the VRB loan, the bank notified defendants, on June 12, 2001, of their default and demanded a cure. Plaintiffs also demanded a cure, but themselves made payment of $30,871.76 to cure the default. Plaintiffs later paid the remaining principal balance on the loan and the delinquent taxes of about $29,991. Plaintiffs thereafter obtained an assignment of the note and trust deed. Plaintiffs also sold the store fixtures and equipment to Pygott for $100,000.

Plaintiffs then brought this action to recover from the Handler and Alexander defendants the sum paid to VRB, plus taxes paid against the property. Plaintiffs filed a motion for summary judgment and the Handler and Alexander defendants filed a cross-motion for summary judgment asserting that merger prohibited the plaintiffs from recovering and that plaintiffs released the defendants from further obligation by wrongfully terminating the Cantwell lease and through the original integrated sale and leaseback transaction. The Cantwells also cross-filed for summary judgment also relying on the doctrine of merger and contending that plaintiffs breached the lease contract and interfered with defendant Martin's (formerly Roselyn Cantwell) sub-lessee contracts and her perspective economic advantage.

The court denied plaintiff's motion for summary judgment and granted the defendants' motions for summary judgment on the merger

defense, on the breach of lease agreement, and for liability for intentional interference with the contract.

Plaintiffs attempted to amend the complaint to add an unjust enrichment claim. However, the court found that it was clear under the doctrine of merger and the reasons stated in the previous order that plaintiffs are barred from collecting the amount they paid to satisfy the note regardless of whether they sought to collect in an action at law or in equity. Defendants' motions were granted based on the equitable doctrine of merger. The doctrine of merger applied with equal force to the unjust enrichment claim.

Defendants Handlers, Alexanders and Burt now seek attorneys' fees.

Defendants assert entitlement to fees under the terms of the sale contract, the note and deed of trust. Plaintiffs filed this lawsuit seeking money they alleged was owed under the contract, note and deed of trust. The contract document attached to plaintiffs' complaint contained an attorneys' fee provision allowing recovery to the prevailing party in the event an action is instituted to enforce any term of the agreement.

The note contained a lender's rights provisions entitling the lender to recover attorneys' fees in an action to collect sums due and owing under the note. Oregon Revised Statute § 20.096 makes the provision reciprocal so that the defendants are entitled to recover fees for prevailing plaintiff's claims on the note.

The deed of trust also contained an attorneys' fee provision similar to the note also made applicable to defendants through operation of ORS § 20.096.

Plaintiffs object to the request for fees arguing defendants successfully defended the action by voiding the contract, the note and trust deed. Consequently, plaintiffs assert that the attorneys' fee provisions are similarly no longer enforceable. See, e.g., Pickinpaugh v. Morton, 268 Or. 9, 17-18 (no attorney fee award to party successfully rescinding the contract). However, in this case, defendants did not rescind or void the contract, they simply asserted the merger doctrine demonstrating that plaintiffs had no right to enforce any rights on the debt and that there was no longer an enforceable lien on the property. The obligation on the contract had in essence been performed and defendants had no further obligation. Defendants still retained rights under the contract with respect to attorneys' fees when plaintiffs asserted a breach.

In a diversity action, the question of attorney's fees is governed by state law. Kabatoff v. Safeco Ins. Co. of America, 627 F.2d 207, 210 (9th Cir. 1980). Under Oregon law, the court must determine if the party is entitled to attorney fees and if the requested fee is reasonable. Bennett v. Baugh, 164 Or.App. 243, 246 (1999).

Factors to be considered as guides in determining the reasonableness of a fee are outlined in Disciplinary Rule 2-106 of the Code of Professional Responsibility:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
> (3) The fee customarily charged in the locality for similar legal services.
> (4) The amount involved and the results obtained.
> (5) The time limitations imposed by the client or by the circumstances.
> (6) The nature and length of the professional relationship with the client.
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
> (8) Whether the fee is fixed or contingent.

The debt under the contract, note and trust deed had been satisfied in full under the merger doctrine. The contract had not been rescinded. Defendants did not seek to evade obligations under the contract by voiding it, they simply sought to avoid double recovery by plaintiffs.

Generally, a party is not entitled to an award of attorney fees unless the award is authorized by statute or by a specific contractual provision. Wilkes v. Zurlinden, 328 Or. 626, 631 (1999); Mattiza v. Foster, 311 Or. 1, 4 (1990). The contract,[2]

---

[2] When a contract specifically provides that attorney fees shall be awarded to one of the parties, such fees shall be awarded to the prevailing party in an action on the contract. McMillan v. Golden, 262 Or. 317, 321 (1972).

note and trust deed in this case contained attorneys' fee provisions and ORS § 20.096 applied the provisions to prevailing defendants. Under the parties' contract, plaintiffs would have been entitled to an award of attorney fees if they had prevailed on the claims for breach of contract. However, defendants successfully defended against plaintiffs' claims and are the prevailing party. See Wilkes, 328 Or. at 632 ("if a plaintiff takes nothing on its claim, then the defendant is the prevailing party under ORS § 20.096"); American Petrofina v. D & L Oil Supply, 283 Or. 183 (1978). Accordingly, under ORS § 20.096(1), defendants are entitled to an award of attorney fees, unless for some other reason they are barred from receiving such an award.

As noted above, successfully rescinding a contract bars reliance on a contractual attorney fee provision, but the contract in this case was not rescinded. Where a judgment does not declare a contract rescinded, the attorney fee provision is enforceable. See Bennett v. Baugh, 329 Or. 282, 285-86 (1991) ("the trial court entered judgment for defendants against plaintiff. That judgment does not declare that the parties' contract was rescinded. Thus, defendants are entitled to an award of attorney fees under the contract and ORS § 20.096(1)."); Desmarais v. The Stayers, Inc., 182 Or. App. 338, 345-46 (2002) ("Where the plaintiff--if successful--would have been entitled to recover attorney fees based on a contractual right, a successful defendant is entitled to

attorney fees, unless the judgment rescinded or otherwise nullified the contract.").

Plaintiffs do not otherwise argue that defendants' fee request is unreasonable. Defendants request $45,179.53 in fees and expenses to defend this case in which plaintiffs sought $468,000. Counsel Eric Kitchen has practiced law since 1975. Kitchen charged $250 an hour for his time. Counsel David Paradis has practiced law since 1985 and charged $175 to $190 an hour for his time. Time records submitted by counsel indicate that the amount of time spent on this litigation, given the motions practice, is reasonable. The rates charged are also reasonable given the experience of the attorneys involved and customary rates charged.[3] The motion (#140) is granted and defendants are awarded fees and expenses in the amount of $45,179.53.

DATED this 6th day of July, 2005.

_____
UNITED STATES DISTRICT JUDGE

---

[3]The 2002 Oregon Bar Economic Survey indicates that the average hourly billing rate for Oregon for an attorney with 21-30 years of experience is $193 and the 95th percentile is $300 (with the 95th percentile in the lower valley being $258). The average Oregon rate for an attorney with 16-20 years experience is $185 and the average rate for such an attorney in the lower valley is $177. Kitchen practices in the area of complex real property transactions including merger of titles in Santa Barbara, California. Paradis practices in the area of complex commercial litigation throughout Oregon.